# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

In re

MICHAEL MELITO and
PAULA A. MELITO,

Debtors

Chapter 13
Case No. 06-10015-RS

## MEMORANDUM OF DECISION
## REGARDING HOMESTEAD EXEMPTION

Before the Court are two objections to the Debtors' claim of a Massachusetts homestead exemption. The Debtors oppose the objections. At issue is whether the Debtors are entitled to the homestead exemption even though, when they commenced this bankruptcy case and because they were then expecting to sell the property, they neither occupied nor intended to occupy as their principal residence the property that is the subject of the exemption claim. For the reasons set forth below, the Court allows the Debtors' homestead exemption claim and overrules the objections.

**Procedural Status**

The Debtors commenced this Chapter 13 case on January 4, 2006 ("Petition Date"). They filed schedules listing their ownership of a Saugus property ("Property") and their claim of a Massachusetts homestead exemption as to the Property ("Homestead Claim"). On the Petition Date, they were residing in a Waltham rental apartment ("Apartment").

The Homestead Claim occasioned multiple contested matters. *First*, the above-noted

objections ("Homestead Objections");[1] *second*, four objections to the Debtors' Chapter 13 plan ("Plan Objections");[2] and *third*, two objections to the Debtors' lien avoidance motions ("Lien Avoidance Objections")[3] (together, "Contested Matters").  The Contested Matters require determination of a single issue, namely, the Debtors' entitlement to the Homestead Claim.

I held a non-evidentiary hearing on the Contested Matters on March 16, 2006 and an evidentiary hearing on the Homestead Claim on May 12, 2006.  I took the matters under advisement and now render my decision regarding the Homestead Claim.

**Background**

The Debtors acquired the Property in 1998.  In 2000, they acquired a Massachusetts estate of homestead in the Property ("Homestead").  In 2005, facing financial problems, the Debtors decided to sell the Property to avoid foreclosure and to preserve their equity through the Homestead.  In August 2005, they entered into a contract for sale of the Property.

Sometime in September 2005 but before the closing of the sale, the Debtors vacated the Property as an accommodation to the proposed buyer, who had requested an earlier occupancy than contemplated in the contract for sale.  Due to financing problems, the buyer did not move in, the sale closing was rescheduled for November 2005, and, when the buyer's financing finally failed altogether, the sale fell through.  The Debtors resumed their sale efforts but, when they

---

[1]There are two formal homestead objections and two such objections raised in the context of the Debtors' judicial lien avoidance motions.  The two formal objections are made by the Chapter 13 trustee ("Trustee") and Michael Kirby dba TPS Industries ("Kirby").  These are the subject of this decision.  The two objections raised in the lien avoidance context are made by Eastern Savings Bank and Mortillaro Lobster, LLC.  These four parties are hereinafter occasionally referred to as the "Objectors".

[2]Made by the Trustee, Kirby, Eastern Savings Bank and Mortillaro Lobster, LLC.

[3]Made by Eastern Savings Bank and Mortillaro Lobster, LLC.

2

commenced this case on January 4, 2006, the Property remained on the market, vacant and unsold, and they were residing in the Apartment. Until their relocation to the Apartment, the Debtors had occupied the Property as their principal residence without interruption from the time they acquired it in 1998.

At their Section 341 meeting,[4] the Debtors testified that, although they owned the Property, they did not reside there and they did not intend to return there, having vacated it to accommodate a buyer and to facilitate a sale. The Objectors, present at the meeting, focused on the occupancy issue and paid little heed to the Debtors' sale-facilitation explanation. In March 2006, the Debtors' tenancy at the Apartment was unexpectedly terminated and they returned to the Property, which remained on the market and still was not sold at the time of the evidentiary hearing.

The position of the Objectors is that the Debtors are not entitled to the Homestead Claim because they neither occupied nor intended to occupy the Property as their principal residence on the Petition Date.[5] The position of the Debtors is that (a) on the Petition Date, the Homestead was valid, enforceable, and fully effective, (b) they did not abandon the Property or otherwise terminate the Homestead, (c) their relocation was incidental to their sale of the Property, and (d) their departure from the Property was intended to implement their realization of the Homestead protection.

---

[4] The meeting took place on January 31, 2006.

[5] The Homestead Objections cast the issue as one of intent to occupy rather than one of abandonment.

**Discussion**

a.   *Framework*

    1.   *Bankruptcy Law*

Section 522 of the Bankruptcy Code affords an individual debtor the opportunity to elect the exemptions available either under federal bankruptcy law or under nonbankruptcy federal, state and local law.  11 U.S.C. §522(b).  The nonbankruptcy exemption law includes the Massachusetts homestead law.  M.G.L.A. c. 188 §1 et seq ("Homestead Statute").  The Debtors made the election with respect to the Property under the Homestead Statute.

    2.   *The Homestead Statute*

The Homestead Statute protects up to $500,000 in the net equity of a home for its owner(s) or lessor(s) (and their families) who occupy that home, or intend to do so, as a principal residence.  M.G.L.A. c. 188 § 1.  With certain exceptions not here implicated, the estate of homestead protects the home and its principally resident occupants from the claims of creditors for the benefit of the homesteader and his/her family.  See *In re Fiffy*, 281 B.R. 451, 454 (Bankr.D.Mass. 2002); see also *In re Vasques,* 337 B.R. 255 (Bankr.D.Mass. 2006) (homestead estate protects homesteader's economic interest as much as legal interest or property itself).

    3.   *Homestead Acquisition*

Under the Homestead Statute, an estate of homestead is acquired by designation in the deed of transfer by which the subject property is acquired or by a declaration in customary form recorded in the requisite registry.  M.G.L.A. c. 188 § 2.  As reflected in the above-cited sections, homesteaders must occupy or intend to occupy a property as their principal residence at the time of acquisition of an estate of homestead, that is, at the time of the conveyance or declaration.  See *Thurston v. Maddox*, 88 Mass. 427 (1863); *In re Webber*, 278 B.R. 294, 298 (Bankr. D.

Mass. 2002).

**4.**     *<u>Homestead Termination</u>*

Under the Homestead Statute, termination like acquisition requires a writing. M.G.L.A. c. 188 §7. See *Webber* at 297. Here, there is no allegation of termination by a writing. Rather, the logic of the Objectors is this: discontinuance of occupancy and of intent to occupy the Property means loss of the Homestead, whatever the circumstances of discontinuance, however temporary and for whatever purpose.

Whether a homestead estate can be terminated by abandonment and whether abandonment can be established by intent (and if so how) are matters not yet finally settled in this district. Bankruptcy Judge Kenner previously expressed reservations regarding termination by abandonment. "[By] specifying three methods of termination, all three requiring a writing, the Massachusetts legislature likely meant to preclude termination by simple abandonment." *Webber* at 298. Bankruptcy Judge Hillman has disagreed, noting long-standing Massachusetts decisions recognizing termination by abandonment. See *In Marrama*, 307 B.R. 332, 337 (Bankr. D. Mass. 2004). See also *In re Taylor*, 280 B.R. 294 (Bankr. D. Mass. 2002).[6]

Even if abandonment were a valid termination methodology, it must be clearly and convincingly demonstrated. "If any acts of abandonment, short of acquiring a new homestead, will defeat a homestead estate, they must be such as afford unequivocal evidence of an *intent to abandon*." *Silloway* at 33 (emphasis added).

---

[6]I acknowledge support for an inference of termination by abandonment in the early Massachusetts cases cited in *Marrama*, for example, *Drury v. Bachelder*, 77 Mass. (11 Gray) 214, 216 (1858); *Silloway v. Brown*, 94 Mass. (12 Allen) 30, 33 (1866).

b.   *Analysis*

The Debtors are entitled to a liberal construction of the exemption claim, and the Objectors bear the burden of proof by a preponderance of the evidence. *Vasques* at 256-257.

The Objectors present the following evidence in support of their burden: *first,* the Debtors were not in occupancy at the Property on the Petition Date; *second*, the Debtors expressed an intention not to return to the Property once they moved out to facilitate the failed sale; *third*, they removed all their household items (leaving only clothes for Goodwill, fixtures, some tools, and a lawn mower); and *fourth*, they intended to occupy the Apartment as their principal residence notwithstanding the unexpected termination of their tenancy there after only six months.

The Debtors present the following evidence in rebuttal: *first*, they properly acquired the Homestead and it had not been terminated in writing on the Petition Date; *second*, their departure from the Property was merely a sale-related accommodation to their then-buyer; *third*, their intent not to occupy was, at all times, premised on the sale of the Property and their recognition that, upon sale, they would afterward reside elsewhere; *fourth*, no one but the Debtors and their family occupied the Property at *any* time after they acquired it; *fifth*, in selling the Property, they intended to preserve their equity in the Property to the extent covered by the Homestead; and *sixth*, but for the scheduled sale, they would not have vacated the Property at all until a sale closing.

I share Judge Kenner's reservations regarding homestead termination by abandonment in Massachusetts. Abandonment is not mentioned in the statute, intent is an often elusive because often changeable creature, and it is not unreasonable to maintain that a protection so formal in its acquisition should be at least as formal in its loss (what must be acquired in a writing should be

6

required to be relinquished in a writing).  That said, I make no definitive ruling on the subject here (since I need not do so for this decision) but merely note some considerations that would inform any such ruling.

In the matter before me, I decline to opine on termination by abandonment beyond this: either there is no termination by abandonment in respect of a Massachusetts estate of homestead or, if there is, the facts advanced by the Objectors to defeat the Homestead fall woefully short of the unequivocal evidence required under the cited Massachusetts decisional law.  Surely abandonment, if it has *any* valid place in the homestead framework, must be reflected in a voluntary, informed and unconditional formation of intent—not, as here, in an act (namely, relocation) premised on an event (namely, a sale) inextricably connected to and conditioning that act.

Indeed, the Debtors' words and actions, far from signifying an intention to *abandon* the Homestead, rather clearly and convincingly signify an intention to *preserve* the benefit of the Homestead—their unrebutted testimony is that, fearing foreclosure and owning a property with equity protected by a valid, enforceable, and effective homestead estate, they vacated that property to facilitate a sale that would realize that protected equity for their benefit.  This is a far more logical reading of the evidence than abandonment.

Having considered the evidence and applicable law, I find that a short-term, temporary and conditional discontinuance of occupancy in connection with and in contemplation of a sale of a principal residence neither constitutes nor establishes abandonment either of that principal residence or of the estate of homestead therein under the Homestead Statute.  Hence, I find that the Objectors have not met their burden of proof and their objections do not stand.

**Conclusion**

On the Petition Date, the Debtors had a valid, effective and enforceable estate of homestead in their Saugus property. They did not abandon either the property or the homestead at any time from their acquisition of the property through and after the Petition Date. Rather, they acted to preserve the economic value of the property and their interest therein. Their intent was unequivocally to preserve and retain that economic value for themselves, as the Homestead Statute authorizes them to do.

Accordingly, the Homestead Claim is **allowed** and the Homestead Objections are **overruled**. In addition, the Lien Avoidance Objections and the Plan Confirmation Objections are also **overruled** to the extent they are based upon the Homestead Objections.

A separate order will issue.


Date: January 4, 2007                    _____
                                          Robert Somma
                                          United States Bankruptcy Judge


cc: Timothy Mauser, Esq., for Debtors
    Carolyn Bankowski, Esq., Chapter 13 Trustee
    Jordan Shapiro, Esq., for Michael Kirby
    Heather Zelevinsky, Esq., for Montillaro Lobster LLC
    Robert Marder, Esq., for Eastern Bank
    Citizens Bank of Massachusetts